IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| DWIGHT KIRKLAND, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 13 C 4115 |
| v. | ) | |
| | ) | |
| KENNY CONSTRUCTION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On June 3, 2013, Plaintiff Dwight Kirkland ("Kirkland"), by counsel, filed the present Complaint alleging employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and the Civil Rights Act of 1866, 42 U.S.C. § 1981, against his former employer Kenny Construction ("Kenny Construction") and Kenny Construction's Deputy Program Manager for Cost and Budget, Michael McCarthy ("McCarthy"). Before the Court are Defendants' motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Defendants' motions for summary judgment and dismisses this lawsuit in its entirety. The Court denies Defendants' motion to strike Kirkland's Local Rule 56.1(b)(3)(B) Response and Appendix, for the reasons discussed below.

**BACKGROUND**

**I.      Northern District of Illinois Local Rule 56.1**

Because Kirkland has been proceeding pro se since April 14, 2014, Defendants served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by

Northern District of Illinois Local Rule 56.2.  The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted).  Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009).  "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)).  Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments.  *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture").  "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559

F.3d at 632; *see also Frey Corp. v. City of Peoria, Ill.,* 735 F.3d 505, 513 (7th Cir. 2013).

Courts must construe pro se pleadings liberally, *see Ambrose v. Roeckeman,* 749 F.3d 615, 618 (7th Cir. 2014), but a plaintiff's pro se status does not absolve him from complying with the federal and local procedural rules. *See Pearle Vision, Inc. v. Romm,* 541 F.3d 751, 758 (7th Cir. 2008); *Greer v. Board of Ed. of City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001). As the Supreme Court instructs, "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).

Although Kirkland cites to evidence in the record concerning some of his responses in his Local Rule 56.1(b)(3)(B) Response, he fails to cite any evidence to refute other statements of fact. In other responses, he directs the Court's attention to his Appendix, which contains many documents that he did not produce during discovery and/or documents that lack an evidentiary foundation. It is well-established that the Court is not required to scour the record looking for factual disputes nor is the Court required to piece together Kirkland's factual and legal arguments for him. *See Diadenko v. Folino*, 741 F.3d 751, 757 (7th Cir. 2013). That being said, the Court will consider Defendants' individual challenges to the facts and evidence within the context of Northern District of Illinois Local Rule 56.1. The Court thus denies Defendants' motion to strike the entire Appendix and Kirkland's Local Rule 56.1(b)(3)(B) Response. Finally, the Court notes that Kirkland did not file a Local Rule 56.1(b)(3)(C) Statement of Additional Facts.

**II.     Relevant Facts**

Kenny Construction is a wholly-owned subsidiary of the publicly-held corporation Granite Construction Inc. and maintains its corporate headquarters in Northbrook, Illinois.  (R. 48, Defs.' Rule 56.1 Stmt. Facts ¶ 2.)  Kenny's Construction Management Group represents owners undertaking large construction projects and one such project includes assisting in the management of the Chicago Transit Authority's ("CTA") capital program.  (*Id*. ¶ 11.)  Chicago Transit Partners ("CTP") is a joint venture, which includes, but is not limited to Kenny Construction, which worked and continues to work on projects for the CTA, including the Dan Ryan Track Renewal Project.  (*Id*. ¶¶ 11, 65.)

The CTA mandated pay ranges for each job category and the CTA must approve the wages paid to employees working on its projects, including those employed by third party contractors such as Kenny Construction.  (*Id*. ¶ 12.)  During the relevant time period, Kenny Construction's former Division Manager for the Construction Management Group, Joe Jaskulski, would recommend the employees' pay rates to the CTA in accordance with the CTA's wage ranges and subject to the CTA's approval.  (*Id*. ¶ 13.)  In determining the pay rate for CTA projects, Jaskulski considers such factors as the individual's pay rate at his or her prior work, the individual's prior construction-related experience, the individual's construction-related education, including licenses and certificates, and the individual's seniority at Kenny Construction.  (*Id*. ¶ 14.)

Kirkland is an African-American male, who currently resides in Orlando, Florida.  (Defs.' Stmt. Facts ¶ 1.)  Kenny Construction hired Kirkland on March 3, 2008, for the position of Cost Estimator at a salary of $91,200.00 per year or $43.85 per hour.  (*Id*. ¶ 25.)  In 1988,

Kirkland earned his undergraduate degree from Judson University in business administration, specializing in finance. (*Id*. ¶ 26.) Prior to his employment with Kenny Construction, Kirkland worked for the Cook County Assessor's Office where he developed estimates of value for industrial, commercial, and residential property used for tax purposes. (*Id*. ¶ 27.) During his employment with Kenny Construction, Kirkland worked on his Masters in Construction Engineering and Management earning a Masters Degree in May 2011. (*Id*. ¶ 30.)

At the time Kenny Construction hired Kirkland in March 2008, he reported to Tom Szyska, who was a Senior Cost Estimator. (*Id*. ¶ 33.) From April 2008 through May 2011, John Etten, the former Deputy Program Manager of Cost Control, supervised Kirkland. (*Id*. ¶ 35.) In Kirkland's 2009 performance review, Kirkland's Division Manager noted that Kirkland failed to get a LEED certification, which was an optional certification. (*Id*. ¶ 55.) While Etten was supervising Kirkland, Etten gave Kirkland a written warning on January 4, 2011, because Kirkland did not show up to work on December 31, 2010. (*Id*. ¶ 56.) In June 2011, Defendant McCarthy took over the position of Deputy Program Manager of Cost Control and became Kirkland's direct supervisor. (*Id*. ¶ 37.) In Kirkland's 2011 performance review, McCarthy informed him that he needed to improve certain performance areas, including his communication skills, his failure to meet deadlines, and his working hours. (*Id*. ¶ 61.)

Kirkland worked on the Dan Ryan Track Renewal Project, along with other projects, and was responsible for the 30% Dan Ryan estimate that had a January 20, 2012 deadline, which he missed. (*Id*. ¶ 65.) On January 30, 2012, the CTA granted Kirkland's request to work from home for the week of January 30, 2012, a privilege that the CTA re-evaluated on a weekly basis. (*Id*. ¶ 66.) On February 3, 2012, McCarthy informed Kirkland that the CTA suspended his

5

privilege to work from home due to his performance and missed deadlines.  (*Id.* ¶ 67.)

On March 7, 2012, at a weekly estimator meeting, a CTA program manager and McCarthy spoke with Kirkland regarding his performance on the estimates and continued failure to meet deadlines.  (*Id*. ¶ 70.)  Also on March 7, 2012, Kirkland filed a charge of discrimination with the EEOC alleging that Kenny Construction subjected him "to different terms and conditions of employment, including but not limited to, being reprimanded for the deficiencies of other Cost Estimators, being assigned work with an extremely short deadlines that was later divided among three other Cost Estimators, being given a poor evaluation that was not based on performance, and being paid less than other Cost Estimators." (*Id*. ¶¶ 3, 4.)  After March 2012, Kirkland continued to work on the Dan Ryan Renewal Project as the lead cost estimator through the 100% estimate stage.  (*Id.* ¶ 72.)

On September 21, 2012, Kirkland emailed Kenny Construction's Human Resources Director Rod Boswell stating he had concerns regarding his working hours and that he had issues with McCarthy.  (*Id*. ¶ 73.)  Thereafter, Boswell conducted a prompt investigation into Kirkland's complaints and did not find any violation of company policy nor did he find any unfair, inappropriate, discriminatory, or retaliatory conduct on behalf of McCarthy.  (*Id*. ¶ 74.)

On December 21, 2012, Kirkland voluntarily resigned his employment at Kenny Construction.  (*Id*. ¶ 79.)

In his five-count Complaint, Kirkland alleges:  (1) a Title VII race discrimination against Kenny Construction (Count I) ; (2) a hostile work environment claim based on race under Title VII against Kenny Construction (Count II); (3) a §1981 race discrimination claim against Kenny Construction and McCarthy (Count III); (4) a hostile work environment claim based on race

6

pursuant to §1981 against Kenny Construction and McCarthy (Count IV); and (5) a retaliation claim under §1981 against Kenny Construction and McCarthy (Count V).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

**I.     Title VII and § 1981 Race Discrimination Claims — Counts I and III**

Kirkland brings his race discrimination claims against Kirkland and McCarthy under Title VII and 42 U.S.C. § 1981 — claims that the Court reviews under the same standard at summary judgment.[1] *See Smiley v. Columbia Coll. Chicago,* 714 F.3d 998, 1002 (7th Cir. 2013).

---

[1] Section 1981—unlike Title VII—permits lawsuits against individual agents of an employer, and thus Kirkland's claims against McCarthy are pursuant to 42 U.S.C. § 1981. *See Johnson v. General Bd. of Pension & Health Benefits of United Methodist Church,* 733 F.3d 722,

To establish that intentional discrimination occurred, Kirkland may proceed under either the direct or indirect methods of proof. *See Andrews v. CBOCS West, Inc.,* 743 F.3d 230, 234 (7th Cir. 2014). Because Kirkland does not offer any direct evidence of intentional discrimination, the Court turns to the indirect method of proof. *See Harper v. Fulton County, Ill.,* 748 F.3d 761, 765 (7th Cir. 2014) ("Direct evidence is evidence that would prove discriminatory intent without reliance on inference or presumption.") (citation omitted).

Under the indirect method of proof, Kirkland must first demonstrate a prima facie case of race discrimination pursuant to *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which has four elements: (1) he is a member of a protected class; (2) he was meeting Defendants' legitimate expectations; (3) he suffered an adverse employment action; and (4) Defendants treated at least one similarly situated employee, who was not in his protected class, more favorably. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014). If Kirkland establishes a prima facie case of intentional discrimination, then the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for the adverse action. *See Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504 (7th Cir. 2014). If Defendants meet this burden, the burden shifts back to Kirkland to present evidence that Defendants' reason is pretext for discrimination. *Id.*; *Alexander,* 739 F.3d at 979.

The Court focuses on the third element of Kirkland's prima facie case of race discrimination, namely, whether he suffered an adverse employment action, because it is

---

727 (7th Cir. 2013). Moreover, because Kirkland is bringing his claims against Kenny Construction under both Title VII and 1981, the Court need not address Kenny Construction's exhaustion arguments. *See Smith v. Bray,* 681 F.3d 888, 896 n.2 (7th Cir. 2012) (Section 1981 does not require exhaustion of administrative remedies).

dispositive. In general, an adverse employment action must materially alter the terms or conditions of employment to be actionable. *See Porter v. City of Chicago,* 700 F.3d 944, 954 (7th Cir. 2012) Examples of material adverse employment actions include termination, demotion, loss of benefits, decrease in wage or salary, or significantly diminished job responsibilities. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013); *see also Alexander,* 739 F.3d at 980. "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Nagle v. Vill. of Calumet Park,* 554 F.3d 1106, 1116 (7th Cir. 2009).

Because Kirkland voluntarily resigned his employment from Kenny Construction in December 2012, he bases his race discrimination claim on his work conditions, unfair discipline, poor performance reviews, and disparate pay. As to Kirkland's allegations regarding his work conditions, it is well-established that being assigned a heavier workload or harder work assignments does not amount to an adverse employment action. *See Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 539 (7th Cir. 2007). Thus, Kirkland's arguments about short deadlines or his difficult work assignments are unavailing. Similarly, other work related conditions that Kirkland highlights did not change the terms and conditions of his employment, including the denial of his request to work from home. *See Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1033 (7th Cir. 2004) ("an adverse employment action does not include an employer's refusal to grant an employee a discretionary benefit to which she is not automatically entitled"). Likewise, Kirkland's argument based on Kenny Construction's discretionary yearly bonuses is without merit. *See Maclin v. SBC Ameritech,* 520 F.3d 781, 788 (7th Cir. 2008); *see Hottenroth,* 388 F.3d at 1033.

In addition, Kirkland contends that Kenny Construction unfairly disciplined him when he received a formal warning for not showing up to work on December 31, 2010, yet Kirkland fails to point to any evidence in the record that this discipline resulted in any material consequences. *See Porter,* 700 F.3d at 955. As to Kirkland's argument about his 2009 and 2011 performance reviews, the Seventh Circuit has "explicitly rejected, that poor performance reviews alone can be the basis for a finding of an adverse employment action by the employer." *Chaib v. Indiana*, 744 F.3d 974, 984 (7th Cir. 2014). Further, it is undisputed that performance reviews at Kenny Construction did not result in pay increases for any employees working on CTA projects. (*Id.* ¶ 52.)

That leaves Kirkland's pay disparity allegations, which may constitute an adverse employment action. *See Tank v. T-Mobile USA, Inc.,* ___ F.3d ___, 2014 WL 3360476, at *7 (7th Cir. July 10, 2014); *Fane,* 480 F.3d at 539. The Court notes that some conduct upon which Kirkland relies in support of his disparate pay claim is time barred under the four year statute of limitations for cases brought under § 1981, including any conduct occurring prior to June 3, 2009. *See Pruitt v. City of Chicago,* 472 F.3d 925, 927 (7th Cir. 2006). Hence, Kirkland's argument that he should have been paid the same rate as his supervisor when Kenny Construction hired him in 2008 is time-barred.

To survive summary judgment on his disparate pay claim, Kirkland must set forth evidence that Kenny Construction paid him a lower salary than similarly situated employees who were not in African-American. *See Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 590 (7th Cir. 2011); *Dandy v. United Parcel Serv., Inc.,* 388 F.3d 263, 274 (7th Cir. 2004). To show that co-workers are similarly situated, Kirkland must demonstrate that the employees were directly

comparable to him in all material respects. *See Hnin,* 751 F.3d at 504; *Zayas v. Rockford Mem. Hosp.,* 740 F.3d 1154, 1158 (7th Cir. 2014). Courts consider certain relevant factors in determining whether employees are similarly situated, including whether they had the same supervisor, held the same position, and were subject to the same employment standards. *See Alexander,* 739 F.3d at 981; *Majors v. General Elec. Co.,* 714 F.3d 527, 538 (7th Cir. 2013). "Although the similarly situated inquiry is not a mechanical comparison, it requires enough common factors to determine if intentional discrimination was at play." *Hnin,* 751 F.3d at 504-05.

Viewing the facts and all reasonable inferences in Kirkland's favor, he has failed to present evidence that Kenny Construction paid similarly situated employees, who were not African-American, more than Kirkland. *See Tank,* 2014 WL 3360476, at *6; *Hnin,* 751 F.3d at 505. Here, the evidence reveals that the CTA mandates the pay ranges for each job category and that the CTA must approve the wages of the Cost Estimators working on its projects. Also, during the relevant time period, Kenny Construction's former Division Manager for the Construction Management Group, Joe Jaskulski, recommended pay rates to the CTA in accordance with the CTA's wage ranges and subject to the CTA's approval. Factors that Jaskulski considered included the employee's pay rate at his prior work, his prior construction-related experience, the individual's construction-related education, including licenses and certificates, and the employee's seniority at Kenny Construction.

The record reveals that other Cost Estimators and employees who worked for Kenny Construction during the relevant time period were not similarly situated to Kirkland based on their education, experience, and seniority at Kenny Construction. Kenny Construction, for

11

example, hired Michael Foster as a Senior Cost Estimator on June 25, 2012. (Defs.' Stmt. Facts ¶ 78.) Unlike Kirkland, Foster had 35 years of experience in heavy construction projects and had previously worked for Kenny Construction on two separate occasions. (*Id*.) Another comparator includes Daniel Roach, who was a licensed architect and had over 25 years of construction management experience, including cost estimating, at the time Kenny Construction hired him. (*Id*. ¶¶ 46, 47.) Evidence in the record also shows that other employees who made more money than Kirkland were Project Managers, who had more job responsibilities than Cost Estimators. (*Id*. ¶¶ 47, 77.) As such, Kirkland has failed to establish that Kenny Construction paid a similarly situated employee, who was not African-American, a higher salary during the relevant time period. The Court therefore grants Defendants' motions for summary judgment as to Kirkland's race discrimination claims alleged in Counts I and III of his Complaint.

## II.   Hostile Work Environment Claims — Counts II and IV

In Counts II and IV of his Complaint, Kirkland alleges hostile work environment claims against McCarthy and Kenny Construction under both Title VII and § 1981.[2] Title VII prohibits an employer from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To succeed on a hostile work environment claim, Kirkland must set forth evidence showing that: (1) his work environment was both objectively and subjectively offensive; (2) the harassment was based on his race; (3) the conduct was either severe or pervasive; and (4) a basis

---

[2] Courts analyze § 1981 hostile work environment claims in the same manner as hostile work environment claims brought pursuant to Title VII. *See Alexander v. Casino Queen, Inc.,* 739 F.3d 972, 979 n.2 (7th Cir. 2014); *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011).

for employer liability. *See Chaib v. Indiana,* 744 F.3d 974, 985 (7th Cir. 2014); *Alexander,* 739 F.3d at 982. The factors courts consider when determining whether there is a hostile work environment, include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alexander,* 739 F.3d at 983 (citation omitted). "In determining whether the evidence in support of a hostile work environment claim meets this standard, [courts] consider the totality of the circumstances." *Porter,* 700 F.3d at 955-56.

Kirkland alleges that the discriminatory conduct commenced once McCarthy became his supervisor in 2011. Kirkland specifically points to the fact that McCarthy required him to sign in and out every time he left work via email. Evidence in the record, viewed in Kirkland's favor, however, indicates that McCarthy made Kirkland sign in and out for only three to four days and that in 2011, all Cost Estimators had to swipe in and out when entering or leaving the CTA facility. (Defs.' Stmt. ¶¶ 59, 60.) In addition, Kirkland argues that McCarthy refused to let him work from home. As discussed above, however, McCarthy and the CTA suspended Kirkland's privilege to work from home based on his poor performance and missed deadlines. Kirkland further asserts that McCarthy made him read a set of 2,500 design drawings in one day that were included in the Dan Ryan 60% estimate that McCarthy asked Kirkland to review for purposes of assisting him with an estimate. (*Id.* ¶ 69.) Moreover, Kirkland argues that McCarthy's 2011 performance review evidences a hostile work environment. Also, Kirkland's argument that he was denied comp time fails to support an inference of a hostile work environment because it is undisputed that Kenny Construction did not have a comp time policy. (*Id.* ¶ 24.)

Viewing these incidences as a whole and in Kirkland's favor, he has not set forth evidence creating a genuine dispute of material fact for trial that McCarthy's conduct was objectively severe or pervasive as to alter the conditions of his employment and create an abusive work environment. *See Zayas*, 740 F.3d at 1160; *Alexander,* 739 F.3d at 982. The described conduct is not physically threatening or humiliating nor did the alleged harassing conduct occur frequently. *See Alexander*, 739 F.3d at 982. Equally important, Kirkland's inability to point to evidence suggesting that this alleged harassment was based on his race is fatal to his claim. *See Gosey v. Aurora Med. Ctr.,*749 F.3d 603, 605 (7th Cir. 2014); *Zayas,* 740 F.3d at 1159.

Without more, Kirkland has failed to set forth sufficient evidence to withstand summary judgment on his hostile work environment claims. The Court therefore grants Defendants' summary judgment motions as to Counts II and IV of the Complaint.

## II.     Retaliation Claim — Count V

Last, in Count V of the Complaint, Kirkland alleges that both Kenny Construction and McCarthy retaliated against him in violation § 1981 based on the internal complaint he made about McCarthy's conduct to Kenny Construction's Human Resources Director in September 2012 and his March 7, 2012, EEOC Charge. The "substantive standards and methods of proof that apply to claims of racial discrimination and retaliation under Title VII also apply to claims under § 1981." *Smith v. Bray,* 681 F.3d 888, 896 (7th Cir. 2012). To establish a retaliation claim, Kirkland may proceed under either the direct or indirect methods of proof. *See Andrews v. CBOCS West, Inc.,* 743 F.3d 230, 234 (7th Cir. 2014).

Under the indirect method, Kirkland must present evidence to establish a prima facie case of retaliation as follows: (1) he engaged in a statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse action; and (4) his employer treated him less favorably than similarly situated employees who did not engage in protected activity. *See id.*; *Johnson v. General Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 727 (7th Cir. 2013). Kirkland can base his retaliation claim on any materially adverse action regardless of whether it affects his terms or conditions of employment. See *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67-68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). As the Seventh Circuit explains, "[t]he showing a plaintiff must make to set out an adverse employment action required for a retaliation claim is lower than that required for a discrimination claim; a plaintiff must only show that the employer's action would cause a 'reasonable worker' to be dissuaded from making or supporting a charge of discrimination." *Chaib,* 744 F.3d at 986-87.

The parties do not dispute that Kirkland's March 2012 EEOC Charge and Kirkland's September 2012 internal complaint to Human Resources constitute protected activities under the first element of a prima facie case of retaliation. Because the protected conduct occurred in March 2012 and September 2012, however, Kirkland must establish that he suffered an adverse action after March 2012. In other words, it is illogical to argue that Defendants retaliated against Kirkland without knowing about his protected conduct. *See Morfin v. City of East Chicago,* 349 F.3d 989, 1005 (7th Cir. 2003) ("The protected conduct 'cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected activity.'") (brackets omitted) (citation omitted). Kirkland has failed to present any evidence that he suffered an adverse action

15

after March 2012 as required under the third element of a retaliation claim pursuant to the indirect method of proof. Therefore, the Court turns to whether Kirkland can establish his retaliation claim under the direct method of proof.

Under the direct method of proof, "a plaintiff must submit evidence from which a jury could reasonably conclude that (1) he engaged in statutorily protected activity; (2) he suffered a material adverse action; and (3) a causal link between the two." *Hnin,* 751 F.3d at 508. Retaliation claims require a tradition "but for" causation, not the lesser "motivating factor" standard of causation. *See id.*; *Reynolds v. Tangherlini,* 737 F.3d 1093, 1104 (7th Cir. 2013). Again, Kirkland has not presented evidence that a materially adverse action occurred after he filed his EEOC Charge and complained about McCarthy's conduct to Human Resources, and thus, he cannot establish the second element under the direct method of proof.

Accordingly, the Court grants Defendants' motions for summary judgment regarding Kirkland's retaliation claim as alleged in Count V of his Complaint.

## CONCLUSION

For these reasons, the Court grants Defendants' motions for summary judgment and dismisses this lawsuit in its entirety.

**Dated:** July 18, 2014

                                      **ENTERED**

                                      _____
                                      **AMY J. ST. EVE**
                                      **United States District Court Judge**